UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIAHANN GOODE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 01900 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| PENNYMAC LOAN SERVICES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Diahann Goode[1] filed this suit against PennyMac Loan
Services, LLC, American Sterling Bank, Mortgage Electronic Registration Systems,
Inc. (MERS), Government National Mortgage Association (Ginnie Mae), Bank of
America, N.A., and "Does 1 through 100, inclusive," alleging various claims related
to Goode's mortgage loan.[2] R. 8, Compl. Defendants PennyMac, MERS, and Bank of
America have moved to dismiss Goode's complaint under Federal Rule of Civil
Procedure 12(b)(6). R. 30, PennyMac and MERS's Mot. Dismiss; R. 33, Bank of
America's Mot. Dismiss. For the reasons discussed below, Defendants' motions are
granted. Goode's claims against American Sterling Bank and Ginnie Mae are also
dismissed without prejudice for failure to effect proper service under Federal Rule of

---

[1]Although Anson Goode, Ms. Goode's husband, often appears in the case caption, he
is not a plaintiff in this case. *See* R. 12, Apr. 25, 2014 Minute Entry ("Plaintiff informed the
Court that she did not intend to name Anson Goode as a plaintiff in this case. The Clerk's
Office shall terminate Anson Goode as a plaintiff.").

[2]This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the TILA
and RESPA claims, and supplemental jurisdiction over the state law claims under 28
U.S.C. § 1367.

Civil Procedure 4. Finally, Goode's claims against "Does 1 through 100, inclusive" are dismissed without prejudice because Goode failed to timely identify and serve these unidentified parties.

## I. Background

In November 2007, Diahann and Anson Goode took out a $197,214 loan from American Sterling Bank. Compl. ¶ 30; *see also* R. 9, Pl.'s Exh. 1, Carrigan Aff. ¶¶ 6-7 (identifying November 26, 2007 as the closing date); R. 9, Pl.'s Exh. 2, Elrod Aff. ¶ 16 (same); R. 32-1, Defs.' Exh. A.A, Mortgage at 7 (same). The loan was secured by a mortgage on their home, located at 9343 South Indiana Avenue in Chicago, Illinois. Compl. ¶¶ 13, 30. The mortgage identifies MERS as the nominee of the American Sterling Bank and its successors and assigns. *Id.* ¶¶ 8, 34; Mortgage at 1. In February 2014, PennyMac (which is now the holder of the note, as explained later in the Opinion) sought to foreclose the Goodes' mortgage, claiming that the Goodes had not made payments since August 2013. R. 32-1, Defs.' Exh. A, Foreclosure Compl.

Goode filed this lawsuit shortly after PennyMac initiated the foreclosure proceedings. She alleges that American Sterling signed a "Pooling and Servicing Agreement" that allowed her loan to be converted into a security. Compl. ¶¶ 22, 30. Securitizing the mortgage required transferring the note to Ginnie Mae, which was acting as trustee for the TRUST 2008-012 Trust. *Id.* ¶ 31. The Goodes' mortgage would then be packaged with other mortgages and shares would be sold to investors. *Id.* ¶¶ 18, 20. According to Goode, this process required several transfers

and assignments before a particular date. *Id.* ¶¶ 32-33, 35-36. She alleges that these transfers did not happen properly, and that Ginnie Mae, therefore, did not hold or own the promissory note or have a right to enforce the mortgage. *Id.* ¶¶ 35-36, 40-43. Goode also claims that during the securitization process, the promissory note and the underlying mortgage were separated, making them unenforceable. *Id.* ¶¶ 44-45, 50. She alleges that, because of these deficiencies, none of the Defendants (whose precise role in the securitization process is not explained in the complaint) can enforce the mortgage against the Goodes. *Id.* ¶ 51. The only individual who has standing to foreclose, according to Goode, "is the holder of the note because they have a beneficial interest." *Id.* ¶ 59. She identifies these individuals as "the certificate holders of the securitized trust." *Id.* Based on these allegations, Goode brought claims for wrongful foreclosure, fraud in the inducement, intentional infliction of emotional distress, slander of title, and quiet title. *Id.* ¶¶ 57-76, 87-88, 90, 94-120.

In her complaint, Goode also identifies several issues with substance of the note and mortgage. She alleges that the terms of the promissory note and mortgage were not properly disclosed by American Sterling, that the terms were unclear, inconsistent, and illegal, and that American Sterling wrongfully qualified the Goodes for a loan that they could not afford. Compl. ¶¶ 52-54. She further claims that all of the Defendants "neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants." *Id.* ¶ 55.

Based on these allegations, Goode brought claims for fraudulent concealment, fraud in the inducement, violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, and violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*

## II. Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to

the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) "require[s] the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). Put differently, the complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (internal quotation marks and citation omitted).

## III. Analysis

### A. PennyMac, MERS, and Bank of America

In her complaint, Goode brings ten separate claims against all Defendants: (1) wrongful foreclosure; (2) fraudulent concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress; (5) slander of title; (6) quiet title; (7) declaratory relief; (8) TILA; (9) RESPA; and (10) rescission. Compl. ¶¶ 57-154. Because many of Goode's claims—Counts 1, 3, 4, 5, 6, 7, and 10—depend at least in

part on which party (if any) has standing to foreclose on the Goodes' mortgage, the Court will address that issue first. The remaining claims will be addressed in turn.[3]

### 1. Standing to Foreclose

The central allegation of Goode's complaint is that no Defendant has a "lawful ownership or a security interest" in Goode's home. Compl. ¶¶ 15, 30-56. Goode claims that her mortgage loan was securitized shortly after it was executed. *Id.* ¶ 31. The securitization process required several transfers between various parties, ultimately culminating in a transfer to Ginnie Mae, acting as trustee for the TRUST 2008-012 Trust. *Id.* ¶¶ 31-33. Goode alleges that the transfers were not properly performed and are therefore void. *Id.* ¶¶ 35-44. She further alleges that in the process of these transfers, her mortgage and promissory note were split up, allegedly making them unenforceable. *Id.* ¶ 50. Because the transfer to Ginnie Mae was invalid and the split note and mortgage could not be enforced, Goode concludes that Ginnie Mae, which she claims identified itself (though she provides no factual context for this allegation) as the "holder and owner" of the note and beneficiary of the mortgage, does not own the mortgage or have standing to foreclose. *Id.* ¶¶ 35-51. She further concludes that the only party who can foreclose on her mortgage is the "holder of the note"; she identifies "the holder of the note" as the "certificate holders of the securitized trust." *Id.* ¶ 59.

PennyMac, MERS, and Bank of America[4] argue that documents in the public record demonstrate that PennyMac has standing to foreclose Goode's mortgage

---

[3]No party asked the Court to relinquish supplemental jurisdiction over the state-law claims if the federal claims were to be dismissed. Therefore, the Court will address both the state- and federal-law claims in evaluating the motions to dismiss.

loan. *See* R. 32, Defs.' Br. at 4-7.[5] Ordinarily, a court may not consider matters outside the pleadings when deciding a motion to dismiss. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639-40 (7th Cir. 2008). A court may, however, take judicial notice of matters of the public record without converting a motion to dismiss into a motion for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012). This "narrow exception" only permits judicial notice of facts that are "not subject to reasonable dispute." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). A fact is not subject to reasonable dispute when it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice thus "allow[s] courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Gen. Elec. Capital*, 128 F.3d at 1081. A court may also consider documents attached to a motion to dismiss without transforming it into a motion for summary judgment if the documents are "referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (internal quotation marks and citations omitted). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the

---

[4]In addition to making its own arguments, Bank of America adopted the arguments made by PennyMac and MERS in their motion to dismiss. R. 33-1, Bank of America's Br at 6.

[5]For convenience's sake and because all moving parties have adopted the arguments therein, the Memorandum in Support of PennyMac and MERS's Joint Motion to Dismiss [R. 32] will be referred to as Defs.' Br.

document and form its own conclusions as to the proper construction and meaning to be given the material." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (internal quotation marks and citations omitted).

Based on these principles, the Court will consider the underlying state-court foreclosure complaint, the attached mortgage and promissory note, and records of assignments available from the Cook County Recorder of Deeds in evaluating the motions to dismiss. *See* Defs.' Exh. A, Foreclosure Compl; Defs.' Exh. A.A, Mortgage; R. 32-1, Defs.' Exh. A.B, Note; R. 32-3, Defs.' Exh. C, Apr. 17, 2012 Assignment; R. 32-4, Defs.' Exh. D, Dec. 20, 2013 Assignment. Goode's complaint frequently references the foreclosure action against her, *see, e.g.,* Compl. ¶¶ 43, 57-76, 94-104, and there is no question that it is central to her claims. She alleges, among other things, wrongful foreclosure and intentional infliction of emotional distress based upon the underlying foreclosure action. *Id*. Moreover, the foreclosure complaint is a matter of the public record; it is a state-court document, "a source whose accuracy cannot reasonably be questioned." *Gen Elec. Capital*, 128 F.3d at 1081 (quoting Fed. R. Evid. 201(b)) (internal quotation marks omitted); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that public court documents are the proper subject of judicial notice). The Court will therefore consider the underlying foreclosure proceeding in evaluating the motions to dismiss (it bears emphasizing that the state-court filings do not, by themselves, establish facts; rather the point is that the Court may examine them because there is no reason to doubt that they have been filed on the state docket). The mortgage itself and the promissory note

are also referred to in Goode's complaint and central to her allegations. Goode's basic argument is that no party has lawful ownership of both the mortgage and the note, and therefore no party can enforce the mortgage. *See, e.g.*, Compl. ¶¶ 15, 40-45, 67. The mortgage and note are critical to Goode's allegations, and the Court will consider the documents in evaluating the motions to dismiss. Finally, the Court will consider the assignments of the Goodes' mortgage that are available through the Cook County Record of Deeds. The transfers and assignments of the mortgage are referenced in and central to Goode's claims, because she alleges that Defendants cannot show proper assignment of the mortgage and note. *See, e.g.,* Compl. ¶¶ 26-27, 35-36, 40-43. The Court will therefore consider the assignments, particularly because they are available in the public record.

The underlying foreclosure action, the mortgage documents, and the assignments available in the public record render the allegations in Goode's complaint implausible. Yes, a court must accept a complaint's allegations as true at the dismissal-motion stage, but "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64. Goode alleges that her mortgage was securitized and transferred to a trust managed by Ginnie Mae, and that Ginnie Mae claims to be the "holder and owner" of Goode's promissory note and the beneficiary of the mortgage. Compl. ¶¶ 31, 40. Because of the nature of this securitization process, Goode alleges that no Defendant has standing to foreclose. *Id*. ¶¶ 58-59. But Goode provides no factual context for the allegation that Ginnie

Mae asserts that it is the holder and owner of the note and the mortgage's beneficiary. In what context has that purported assertion been made? The complaint says nothing about that, and so provides no notice of the specific claim. And, on top of the lack of notice, the documents in the record plainly contradict this assertion. The underlying foreclosure action was brought by PennyMac, not Ginnie Mae, and *PennyMac* asserts that it is the holder and owner of the note and beneficiary of the mortgage. *See* Defs.' Exh. A, Foreclosure Compl. PennyMac attached the promissory note, indorsed in blank, to the foreclosure complaint. Defs.' Exh. A.B, Note. Furthermore, the assignments in the public record show that the mortgage was assigned by MERS (as nominee) to Bank of America on April 17, 2012, and then from Bank of America to PennyMac on December 20, 2013. Defs.' Exh. C, Apr. 17, 2012 Assignment; Defs.' Exh. D, Dec. 20, 2013 Assignment. There is no recorded transfer or assignment to Ginnie Mae or any trust, and no hint that Ginnie Mae has ever identified itself as the holder or owner of the note or beneficiary of the mortgage.

In an affidavit attached to Goode's complaint, Chad Elrod, who purportedly conducted "Securitization Analysis" on Goode's mortgage, declares that there is an assignment of Goode's mortgage "dated FEBRUARY 28, 2008 and recorded APRIL 23, 2012 COOK County, ILLINOIS No. #11408189 with an assignor MERS with an assignee GOVERNMENT NATIONAL MORTGAGE ASSOCIATION as Trustee for the TRUST 2008-012 Trust." Pl.'s Exh. 2, Elrod Aff. ¶ 45. Ordinarily, this factual assertion would be taken as true for the purposes of the motion to dismiss. But the

documents available through the Cook County Recorder of Deeds, combined with common sense, lead to the unavoidable conclusion that this allegation is implausible. Elrod states that there is an assignment to Ginnie Mae recorded on April 23, 2012 with a document number of 11408189. Yet there is no document bearing this number in the records of the Cook County Recorder of Deeds.[6] A search using the Goodes' property identification number (25033170150000) does show a document recorded on April 23, 2012, but this document is the April 17, 2012 assignment from MERS to Bank of America.[7] *See* Defs.' Exh. C, Apr. 17, 2012 Assignment. Curiously, this assignment bears the document number 1211408189, the last eight digits of which are identical to the document number of the purported assignment to Ginnie Mae identified in the Elrod Affidavit. There do not appear to be any assignments to or from Ginnie Mae associated with the Goodes' property identification number. And Goode does not attach to the complaint a copy of the purported assignment to Ginnie Mae, nor does Elrod explain the method by which he searched for the document. The absence of the purported transfer to Ginnie Mae in the public records of the State, combined with the absence of an explanation by Elrod as to how he came to the legal conclusion that there is an assignment to Ginnie Mae, render Goode's allegation that this transfer occurred implausible.

---

[6] The Court also attempted to search for document numbers 1140818900 and 0011408189 without success (most document numbers in the records of the Cook County Recorder of Deeds appeared to be ten digits long).

[7] The existence or non-existence of these documents in the public records of the state, "a source whose accuracy cannot reasonably be questioned," is the proper subject of judicial notice. See Fed. R. Evid. 201(b).

Goode's complaint also alleges that Bank of America was the "Master Servicer" for the securitized trust run by Ginnie Mae.[8] Compl. ¶ 7. Read charitably, this allegation could suggest that the assignment to Bank of America was, in fact, an assignment to the trust. In the affidavit of Michael Carrigan, attached to Goode's complaint, Carrigan asserts that "Guarantor – Ginnie Mae" is reported as an "investor" in the Goode's loan on the MERS website, "which indicates a past or current purported ownership interest of the FHA loan." Pl.'s Exh. A, Carrigan Aff. ¶ 7. Carrigan then notes the existence of a Ginnie Mae trust settled in February, 2008 underwritten by Banc of America Securities LLC and Loop Capital Markets LLC. *Id.* (identifying the trustee as U.S. Bank National Association). Carrigan ultimately concludes after "[c]areful review and examination" that the Goodes' mortgage "*may* have been a securitized loan." *Id.* ¶ 15 (emphasis added). The Elrod Affidavit also describes the Ginnie Mae TRUST 2008-012 Trust as being serviced by Bank of America. Pl.'s Exh. 2, Elrod Aff. ¶ 16. Elrod includes screenshots of records found on Bloomberg L.P., but none of these screenshots appear to identify Bank of America as the servicer. *Id.* Elrod does not provide any information as to how he knows Bank of America is the servicer, stating unintelligibly that "[t]he loan is being serviced by BANK OF AMERICA, N.A. with the clarifying code and, or abbreviation on the Specialty Licensed Terminal of GINNIE MAE REMIC TRUST 2008-012." *Id.*

---

[8]Perhaps this explains why Elrod would identify an assignment from MERS to Bank of America as one from MERS to Ginnie Mae.

Unfortunately for Goode, these allegations are not sufficient to raise her claim for relief beyond the speculative level. Particularly when viewed in conjunction with the other deficiencies in Goode's complaint, the conclusory statements that Bank of America was involved with the Ginnie Mae trust that is then linked vaguely to the Goode's loan does not constitute "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Based on a common-sense reading of Goode's complaint and the documents referenced therein that are central to Goode's claims, the Court concludes that Goode's allegations surrounding Ginnie Mae's involvement, the assignment of the Goodes' mortgage to a trust, and the securitization process are implausible.

This conclusion bears on several counts in Goode's complaint. In Count 1, Goode brings a claim for "wrongful foreclosure," in which she claims that no Defendant has the right to foreclose on the mortgaged property. Compl. ¶¶ 57-76. As a preliminary matter, this Count fails to state a claim against MERS or Bank of America because Goode has put forth no factual allegations whatsoever that either Defendant has taken any action to foreclose. Although Goode makes no *specific* allegation that PennyMac wrongfully foreclosed her mortgage, the underlying foreclosure complaint demonstrates that PennyMac instituted foreclosure proceedings. *See* Defs.' Exh. A, Foreclosure Compl. In her claim for wrongful foreclosure, Goode claims that no Defendant has standing to foreclose because the loan was not properly securitized, and that "[n]o Defendant…can show they are the

holder or owner of the mortgage and/or note." Compl. ¶¶ 35-44, 60-62. She claims that "the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest." *Id.* ¶ 59. She goes on to identify the holders as the "certificate holders of the securitized trust." *Id.* As discussed above, however, Goode's allegations that the mortgage was transferred to Ginnie Mae and placed in trust to be securitized are implausible. The documents before the Court show that PennyMac was in possession of the note, indorsed in blank, and an assignee of the mortgage. Defs.' Exh. A.B, Note; Defs.' Exh. C, Apr. 17, 2012 Assignment; Defs.' Exh. D, Dec. 20, 2013 Assignment. Under Illinois law, PennyMac had standing to enforce the mortgage as a holder of the note. *See* 735 ILCS 5/15-1504(a)(3)(N); 810 ILCS 5/1–201(b)(21)(A); *Mortg. Elec. Registration Sys., Inc. v. Barnes*, 406 Ill. App. 3d 1, 6 (Ill. App. Ct. 2010); *see also* Compl. ¶ 59 ("[T]he only individual who has standing to foreclose is the holder of the note."). Goode's claim of wrongful foreclosure therefore fails to state a claim against PennyMac.

In Count 3 of her complaint, Goode alleges fraud in the inducement. Compl. ¶¶ 86-93. She claims, in part, that Defendants fraudulently foreclosed on Goode's mortgage by misrepresenting that they were the holder and owner of the note and the beneficiary of the mortgage. *Id.* ¶ 88. Again, there are no factual allegations that MERS or Bank of America took any action to foreclose or represented that they were the holder and owner of the note or beneficiary of the mortgage. This Count, therefore, fails to state a claim against those Defendants. Count 3 also fails to state a claim against PennyMac. Count 3 alleges that Defendants fraudulently

misrepresented that they were the holder and owner of the note and had standing to foreclose. As discussed above, Goode's allegations that the loan was transferred to Ginnie Mae and securitized are implausible, and the documents before the Court demonstrate that PennyMac held the note indorsed in blank. Goode's allegations that PennyMac misrepresented itself as holder of the note do not plausibly state a claim. To the extent that the fraud-in-the-inducement count relies on standing to foreclose, it is dismissed.

In Count 4, Goode alleges intentional infliction of emotional distress caused when Defendants "fraudulently attempt[ed] to foreclose." Compl. ¶¶ 94-104. Even assuming that instituting foreclosure proceedings could ever qualify as the extreme and outrageous behavior required for intentional infliction of emotional distress, for the reasons discussed above, Goode does not state a plausible claim that PennyMac's attempt to foreclose was fraudulent. Again, there are no factual allegations suggesting that MERS or Bank of America made any attempt to foreclose. The claim for intentional infliction of emotional distress against PennyMac, MERS, and Bank of America is therefore dismissed. In Counts 5 and 6, Goode brings claims for slander of title and quiet title, which, again, are based on Goode's allegations that no party was the holder and owner of the note or beneficiary of the mortgage. *Id.* ¶¶ 105-20. As stated above, PennyMac owned the note, indorsed in blank. The quiet title and slander of title counts therefore fail to state a claim. Finally, Goode asserted a claim for declaratory relief, seeking a declaration that Defendants do not have authority to foreclose upon the property.

Compl. ¶¶ 123-32. For the same reasons, this count fails to state a claim and is dismissed.

## 2. Fraud Claims

In Counts 2 and 3 of her complaint, Goode alleges that Defendants engaged in two types of fraud: fraudulent concealment (Count 2) and fraud in the inducement (Count 3). In her fraudulent-concealment claim, Goode alleges that Defendants committed fraud by concealing that the mortgage loan would be securitized. Compl. ¶ 78. She claims that securitization had "a materially negative effect on Plaintiff" and that "Defendant knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans." *Id.* ¶¶ 78-79. In her fraud-in-the-inducement claim, Goode focuses primarily on Defendants' standing to foreclose, which was addressed above. *See supra* § III.A.1. In those allegations that can be construed to avoid the standing-to-foreclose issue, Goode claims that Defendants failed to disclose the "material terms" of the loan transaction with the intent to cause Plaintiff to "rely on the misrepresentation." Compl. ¶¶ 89-90. This was allegedly done for "the purpose of initiating the securitization process." *Id.* ¶ 90.

PennyMac, MERS, and Bank of America argue that Goode has failed to state a claim under the heightened pleading standard required for fraud claims under Federal Rule of Civil Procedure 9(b). Defs.' Br. at 8-9. The Court agrees. Under Rule 9(b), a plaintiff alleging fraud must "state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). This

"require[s] the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality*, 974 F.2d at 923 (internal quotation marks and citation omitted). Goode fails to allege any of the required elements for either fraud claim.

Goode does not identify *who* made misrepresentations about the securitization process in either claim. In her fraudulent-concealment claim, she makes a blanket allegation that "Defendants" concealed the fact that the loans were to be securitized. Compl. ¶ 78. Nothing in her complaint identifies which of the many Defendant(s) misrepresented the nature of her mortgage loan. Her fraud-in-the-inducement claim similarly refers only to "Defendants" without specifying *who* made the offending misrepresentation. *Id.* ¶¶ 89-90. American Sterling Bank was the original mortgage lender and allegedly entered into the Pooling and Servicing Agreement that initiated the securitization process. Compl. ¶¶ 22, 30, 52-53. Goode makes no factual allegations that PennyMac, MERS, or Bank of America were even present when the loan was originated, let alone that they made misrepresentations or concealed material information that induced Goode to enter into the loan. For both fraud claims, Goode also fails to allege *when* these misrepresentations were made or *how* the misrepresentations were communicated to her.

Goode's description of the *content* of the misrepresentations is also insufficient. Her fraud-in-the-inducement claim says only that Defendants "fail[ed] to disclose the material terms of the transaction." Compl. ¶ 89. She does not identify

what the material terms were or which terms were concealed. In describing the misrepresentations in her fraudulent concealment claim, Goode alleges that "Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements." *Id*. ¶ 78. According to Goode, this included concealing financial incentives paid, the existence of Credit Enhancement Agreements, and the existence of Acquisition Provisions." *Id.* Even if these undefined terms could provide enough particular factual information to give PennyMac, MERS, and Bank of America sufficient notice of the nature of the claims against them, the allegations fail to plead a required element of Goode's claim: a duty to disclose. In fraudulent concealment claims, "a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (citing *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010)). This typically requires a fiduciary or confidential relationship between the parties or a situation in which the defendant is in a position of influence and superiority over the plaintiff. *Id.* (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996)). Goode has not alleged (either expressly or impliedly) any fiduciary or confidential relationship between herself and PennyMac, MERS, or Bank of America, nor has she put forth any other reason that Defendants had a duty to disclose to her that her loan would be securitized. Because Goode's fraudulent concealment claim fails to plead all required elements and both fraud claims fall

dramatically short of the particularity requirement of Rule 9(b), Counts 2 and 3 are dismissed.

### 3. TILA Claim

In Count 8, Goode alleges that all Defendants violated TILA "by failing to provide Plaintiff with accurate material disclosures required under TILA/HOEPA."[9] Compl. ¶ 135. Under TILA, a lender in a commercial credit transaction is required to disclose certain terms and conditions of the transaction to a borrower prior to consummating the loan. *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001). Assignees of the original lender are only liable "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). A violation is "apparent" if it is "(1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." *Id.*; *see also Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998). A servicer of consumer loans "shall not be treated as an assignee of such obligation…unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1); *see also Iroanyah v. Bank of America*, 753 F.3d 686, 688 n.2 (7th Cir. 2014).

Goode fails to state a claim under TILA against PennyMac, MERS, and Bank of America. Although a plaintiff's factual allegations are accepted as true in the motion to dismiss stage, "allegations in the form of legal conclusions are insufficient

---

[9]The Home Ownership and Equity Protection Act of 1994 (HOEPA), Pub. L. 103-325, 108 Stat. 2160, amended TILA.

to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A plaintiff must "provide some specific facts to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks*, 578 F.3d at 581) (internal quotation marks and alterations omitted).

The factual allegations in Goode's TILA claim are unacceptably sparse. In her TILA claim, she alleges only that:

> Defendants violated TILA/HOEPA by failing to provide Plaintiff with accurate material disclosures required under TILA/HOEPA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

Compl. ¶ 135. The only other statement in the complaint that could plausibly support the alleged TILA violation says that Defendants "neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants." *Id.* ¶ 55. Goode does not provide any factual matter whatsoever describing what disclosures were given before consummating the loan, who made such disclosures, and how the disclosures were deficient.

Moreover, Goode makes no attempt to plead facts showing that PennyMac, MERS, and Bank of America—none of which were the original lender—are subject to liability. As nominee, MERS is not subject to TILA liability unless it was the owner of the original loan. 15 U.S.C. § 1641(f)(1); *Iroanyah*, 753 F.3d at 688 n.2 (holding that, as a nominee of a mortgage loan, MERS was not subject to liability under TILA). Goode has made no allegations suggesting that this was the case. *Cf.* Compl. ¶ 25 (stating that "MERS would hold the Mortgage/Deed of Trust for whoever later claimed to be the 'owner' of the homeowners' mortgage note"). PennyMac and Bank of America could theoretically be subject to liability as assignees of the lender, although Goode does not appear to make any specific allegations suggesting that the parties were, in fact, assignees. Even assuming that Goode provided sufficient factual matter, taken as true, to demonstrate that PennyMac and Bank of America were assignees of American Sterling, Goode does not plead any facts suggesting that the TILA violation was "apparent on the face of the disclosure statement." Goode hardly provides any facts at all; she does not come close to alleging "enough details about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616 (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Goode's broad, conclusory allegations are not sufficient to give Defendants notice of the claims against them, and accordingly, her TILA claim is dismissed.

### 4. RESPA Claim

Goode also brings a claim against all Defendants for violations of RESPA. Compl. ¶¶ 143-49. RESPA prohibits, among other things, the payment or receipt of "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). "Settlement services" include "the origination of a federally related mortgage loan." 12 U.S.C. § 2602(3). Goode's precise allegations in her RESPA claim are not immediately clear. After setting out language from a United States Department of Housing and Urban Development policy document about appropriate fees to mortgage brokers, Goode claims that Defendants received "interest and income" that is disproportionate to Goode's "situation." Compl. ¶¶ 145-46. She also claims that no "separate fee agreements" were provided, and that "payments between the Defendants were misleading and designed to create a windfall." *Id.* ¶¶ 147-48. Read generously, the complaint seems to allege that Defendants received improper fees related to the settlement of Goode's loan.[10]

Goode again fails to state a claim against PennyMac, MERS, and Bank of America. Even if she had put forth any facts suggesting that PennyMac, Bank of America, or MERS participated in the loan settlement (which she did not), she has

---

[10]RESPA also requires that borrowers receive notice when their loan is transferred, 12 U.S.C. § 2605(b)-(c), and that loan servicers respond promptly to borrowers' written requests for information, 12 U.S.C. § 2605(e). Goode's complaint, however, appears to focus on "the legality of lender payments to mortgage brokers" and "payments between the Defendants." Compl. ¶¶ 145, 148. Nothing in Count 9 discusses failure to give notice of a transfer or failure to respond to a request for information. *See id.* ¶¶ 143-49. The Court therefore considers Goode's RESPA claim as one falling under § 2607 rather than § 2605.

not alleged what (if any) fees were paid or received by these Defendants. Nor has Goode alleged how or why these fees (if there were any) were for services not rendered or otherwise ran afoul of RESPA. Instead, she inscrutably claims that the "interest and income that Defendants have gained is disproportionate to the situation Plaintiff find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffer financially." Compl. ¶ 146. Goode does not even make "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, much less factual allegations that would plausibly state a claim for relief. Goode's RESPA claim is dismissed.

### 4. Claim for Rescission

In her complaint, Goode seeks rescission of her mortgage loan. *See* Compl. ¶¶ 150-54. Goode alleges seven independent grounds for rescission: (1) TILA; (2) failure to provide a mortgage loan origination agreement; (3) fraudulent concealment; (4) fraud in the inducement; (5) failure to abide by the PSA; (6) making illegal or fraudulent transfers of the note and Mortgage/Deed of Trust; and (7) public policy grounds. *Id.* ¶ 151. As discussed above, the TILA and fraud claims are dismissed. *See supra* § III.A.1-3. Any rescission claim based upon those grounds is therefore also dismissed. Failure to abide by the PSA is also not an appropriate ground for rescission. Goode was not a party to the PSA and has no standing to enforce it. *See, e.g., Deutsche Bank Nat'l Trust Co. v. Christian*, No. 12 C. 03613, 2013 WL 6283584, at *3 (N.D. Ill. Dec. 4, 2013); *HSBC Bank USA, N.A. v.*

*Hardman*, No. 12 C 00481, 2013 WL 515432, at *6 (N.D. Ill. Feb. 12, 2013); *Long v. One West Bank, FSB*, No. 11 C 00703, 2011 WL 3796887, at *4 (N.D. Ill. Aug. 24, 2011). Her rescission claim based upon enforcement of the PSA is also dismissed.

It is not clear whether the second basis for rescission, failure to provide a mortgage loan origination agreement, is based on another claim in Goode's complaint or is wholly independent. Failure to provide a mortgage loan origination agreement could plausibly be related to Goode's RESPA claim, as origination agreements often concern the relationship between a borrower and a mortgage broker. *See, e.g.*, *Nat. Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 159 (D.D.C. 2011). Because RESPA prohibits fees between the lender and the mortgage broker for services not actually performed, failure to provide an origination agreement could potentially be related to improper settlement fees. *See* 12 U.S.C. § 2607(b). If this basis for rescission is based upon Goode's now-dismissed RESPA claim, the rescission claim is also dismissed. If, instead, the second ground for rescission is somehow independent of the previous claims, the claim is dismissed because there are no factual allegations supporting relief on this basis. The remaining ground for rescission, public policy, is also so devoid of factual material that it cannot possibly state a claim on which relief can be granted. Goode makes no attempt to articulate how a failure to rescind her mortgage loan would be contrary to public policy. Because all stated grounds for rescission fail, the claim for rescission is dismissed in its entirety.

## B. Insufficient Service of Process

Under Federal Rule of Civil Procedure 4(m), a defendant must typically be served with a summons and a copy of the complaint within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m). After giving notice to the plaintiff, the court may dismiss an action on its own initiative for failure to properly serve a defendant in the 120-day period. *Id.* After her complaint was filed on April 14, 2014, Goode attempted to serve the Defendants in this case by certified mail. *See* R. 11-3, Summons for Ginnie Mae; R. 11-4, Summons for American Sterling Bank; s*ee also* Compl. On April 25, 2014, the Court warned Goode and the person who attempted to serve process that certified mail was not an acceptable means of service. *See* Apr. 25, 2014 Minute Entry. After this warning from the Court, Goode had ample time to correct her error and serve Defendants in a method that is acceptable under the Federal Rules. As explained next, Goode nevertheless failed to properly serve American Sterling Bank and Ginnie Mae, and the claims against those Defendants are therefore dismissed without prejudice. *See* Fed. R. Civ. P. 4(m).

### 1. American Sterling Bank

Goode attempted to serve American Sterling Bank by sending the summons and complaint via certified mail to an address in Burr Ridge, Illinois. S*ee* Summons for American Sterling Bank. Under the Federal Rules and Illinois law, certified mail is generally not an adequate means of service for corporations like American Sterling Bank.[11] The Federal Rules provide that a plaintiff may serve a corporation

---

[11]It appears that American Sterling Bank was dissolved in 2009. *See* Federal Deposit Insurance Corporation, *Metcalf Bank, Lee's Summit, Missouri, Assumes All of the Deposits*

"by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). A plaintiff may also serve a corporation under the Federal Rules "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) instructs a plaintiff to "follow[ ] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Under Illinois law, a corporation may be served by "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." 735 ILCS 5/2-204. If a corporation is dissolved, a plaintiff may serve the registered agent on record for five years after the dissolution of the corporation, 805 ILCS 5/5.05, or the Secretary of State, 805 ILCS 5/5.25. Certified mail is thus not listed as an appropriate method of serving corporations in the text of the Federal Rules or the relevant state statutes. *See* Fed. R. Civ. P. 4(e)(1), (h); 735 ILCS 5/2-203; 735 ILCS 5/2-204; *see also Reavley v. Toyota Motor Sales Corp.*, No. 00 C 03676, 2001 WL 127662, at *6 (N.D. Ill. Feb. 14, 2001). Even if it were, it does not appear that the summons and complaint sent by certified mail reached *anyone* at all, let alone an agent of the now-dissolved American Sterling Bank.

---

*of American Sterling Bank, Sugar Creek, Missouri*, Press Release (Apr. 17, 2009), https://www.fdic.gov/news/news/press/2009/pr09054.html.

Where service is not made within the 120-day period, a court may extend the time to serve for good cause. Fed. R. Civ. P. 4(m). If good cause does not exist, the court may nevertheless "direct that service be effected within a specified time." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). Goode and the individual attempting service were warned in April, months before the 120-day period expired, that their attempt at service was inadequate. *See* Apr. 25, 2014 Minute Entry. It does not appear that Goode made any efforts to effect proper service since that warning, nor has she articulated any good cause for failing to serve American Sterling. Goode has had ample time and opportunity to serve Defendants properly, and she has not done so. The Court can see no reason to give Goode any additional time to serve. The claims against American Sterling Bank are accordingly dismissed without prejudice under Rule 4(m).

### 2. Ginnie Mae

For federal government corporations like Ginnie Mae,[12] Rule 4 does allow for service by certified mail in certain circumstances. Fed. R. Civ. P. 4(i). To properly serve a federal government corporation using certified mail, "a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee." Fed. R. Civ. P. 4(i)(2). To serve the United States, a plaintiff must first serve a copy of the summons and complaint on the United States Attorney for the district in which the action is brought or send a copy by registered or certified mail to the civil-process

---

[12]Ginnie Mae is a wholly-owned government corporation within the United States Department of Housing and Urban Development. 12 U.S.C. § 1717(a)(2)(A); 31 U.S.C. § 9101(3)(G).

clerk at the United States Attorney's office. Fed. R Civ. P. 4(i)(1)(A). The plaintiff must also send a copy of the summons and complaint "by registered or certified mail to the Attorney General of the United States at Washington, D.C." Fed. R. Civ. P. 4(i)(1)(B).

Goode attempted to serve Ginnie Mae by sending the summons and complaint by certified mail to Ginnie Mae's office in Washington, D.C. *See* Summons for Ginnie Mae. It does not appear that Goode made any attempt to serve the United States as required by Rule 4(i). Again, Goode was warned early in the case that her method of service was improper and made no further attempts to properly serve Defendants. Because Ginnie Mae was not properly served within the 120-day period required by the Federal Rules, the claims against Ginnie Mae are dismissed without prejudice.[13]

### 3. Does 1 through 100

Goode also names "Does 1 through 100, inclusive" as defendants in her complaint. She states that she "does not know the true names, capacities, or basis for liability of [these defendants]," but that she "will amend this Complaint to allege their true names and capacities when ascertained." Compl. ¶ 10. Goode's complaint does not identify what the Doe defendants did, their relationship to her or her loan, or any other information that might help identify them. Perhaps more importantly, Goode's complaint does not allege any wrongdoing by these unidentified defendants beyond that they are "in some manner liable to Plaintiff, or claims some right, title,

---

[13]In any event, judicially-noticed documents in the public record render the claims against Ginnie Mae implausible. *See supra* § III.A.1.

or interest in the Property." *Id*. ¶ 10. Under Rule 4(m), Goode was required to serve the Doe defendants within 120 days of filing the complaint. Fed. R. Civ. P. 4(m). She has failed to do so, and again there is no good cause for the failure to serve, nor did the complaint provide any basis to name the Does in the first place. The claims against the unidentified defendants are therefore dismissed without prejudice.

## IV. Conclusion

For the reasons discussed above, the Defendants' motions to dismiss are granted. Accordingly, the claims against PennyMac, MERS, and Bank of America are dismissed with prejudice. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[D]ismissal of a suit for failure to state a claim is always with prejudice."). The claims against American Sterling Bank, Ginnie Mae, the unidentified defendants are dismissed without prejudice for failure to effect proper service of process. *See* Fed. R. Civ. P. 4(m).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 18, 2014